722 A.2d 918

SIDNEY KOCH AND DOROTHY KOCH, PLAINTIFFS–
APPELLANTS, v. DIRECTOR, DIVISION OF
TAXATION, DEFENDANT–RESPONDENT.

Argued September 15, 1998—Decided January 14, 1999.

*Howard M. Soloman* and *Harold Leib* argued the cause for appellants (*Harold Leib & Associates*, attorneys; *Mr. Leib, Mr. Soloman, Elisa Leib* and *Robert C. Hess*, on the briefs).

*Patrick DeAlmeida*, Deputy Attorney General, argued the cause for respondent (*Peter Verniero*, Attorney General of New Jersey, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of

counsel; *Joseph W. Fogelson,* Deputy Attorney General, on the brief).

*Robert J. Holtz,* a member of the Pennsylvania bar, argued the cause for *amici curiae* The National Realty Committee, The New Jersey Apartment Association and The New Jersey Chapter of the National Association of Industrial and Office Properties (*Archer & Greiner,* attorneys; *Mr. Holtz, John C. Connell* and *Steven K. Mignogna,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal involves the tax treatment under the New Jersey Gross Income Tax Act, *N.J.S.A.* 54A:1–1 to 10–12 (the "Act"), of a taxpayer's gain realized from the sale of his partnership interest. The primary issue concerns the proper method for calculating a taxpayer's cost basis for a partnership interest and, specifically, whether that cost basis should be the purchase price or the taxpayer's federal adjusted basis (his purchase price less the losses deducted on his federal income tax returns). In addition to reducing taxpayer's federal adjusted basis, those losses also provided the taxpayer with a federal income tax benefit. However, because those losses were not deductible on the taxpayer's New Jersey gross income tax returns, they provided taxpayer with no tax benefit under the Act.

## I.

### A.

This appeal arises from a tax deficiency assessed against Sidney and Dorothy Koch.[1] The facts are stipulated.

In 1983, Koch purchased a limited partnership interest in U.S. Cable of Tri–County, Ltd. ("US Cable") for $75,000 in cash. He

---

[1] Dorothy Koch is a party to this action solely because she filed joint returns with her spouse, Sidney Koch ("taxpayer" or "Koch").

also agreed to be personally liable for a portion of U.S. Cable's indebtedness to a third party. Between December 31, 1987, and the sale of his interest in U.S. Cable in 1988, the amount of such indebtedness for which Koch was personally liable was $136,895.

From 1983 through 1987, Koch was allocated $218,161 of U.S. Cable's losses. Koch deducted $211,895 of those losses on his federal income tax returns. Accordingly, as of December 31, 1987, Koch's federal income tax basis for his interest in U.S. Cable was reduced to zero. His capital account in the partnership was reduced from $75,000 to negative $136,895, which equals the $75,000 initial cash purchase price, less the deductible losses of $211,895. The remaining $6,957 of the losses so allocated to Koch during those years could not be deducted by him for federal income tax purposes.

In 1988, pursuant to an Agreement for Sale, Koch sold his entire interest in U.S. Cable for (i) $125,000 in cash, (ii) an additional constructive payment of $143,161 [2] that eliminated the deficit in his capital account, and (iii) a release from the creditors of U.S. Cable of his personal liability for the partnership's debt.

On his 1988 federal income tax return, Koch reported an "amount realized" of $268,161 in connection with the sale of his interest in U.S. Cable, computed by adding the cash received ($125,000) and reversal of his negative capital account ($143,161). Due to the losses he deducted in prior years, Koch had no basis in the partnership for federal income tax purposes. Thus, the entire amount realized on the sale of his partnership interest was taxable income. He reported $217,785 as capital gain and $50,376 as depreciation recapture income.

On his 1988 New Jersey gross income tax return, Koch reported $50,000 as net gain from the sale of his partnership interest. That

---

[2] The difference between the balance in Koch's capital account as of December 31, 1987 ($136,895) and the date of the sale ($143,161) is attributable to $6,957 of disallowed losses and $691 of income allocated to Koch for 1988 ($136,895—$6,957 + $691 = $143,161.)

amount was the difference between the sale proceeds of $125,000 and the $75,000 price paid for his partnership interest. Koch did not reduce the initial cost basis of his partnership interest by U.S. Cable's losses allocated to him because those losses are not deductible under the Act.

The Director, Division of Taxation ("Director") redetermined Koch's 1988 New Jersey gross income tax liability. The Director concluded that, with respect to the sale of his interest in U.S. Cable, Koch's basis in that partnership interest was exactly the same as his basis for federal income tax purposes. Accordingly, Koch was required to report the same amount of gain for New Jersey gross income tax purposes as he reported for federal income tax purposes.

### B.

Koch filed a complaint with the Tax Court, asserting primarily that the Act does not require a taxpayer to reduce the basis of his partnership interest by partnership losses that are not deductible under the Act. Therefore, he did not have to use the federal adjusted basis of his partnership interest in calculating the gain from the sale of that interest.

The Tax Court disagreed and concluded that, in determining gain or loss under the Act, adjusted basis for federal income tax purposes must be used and no exception shall be made even where the taxpayer was unable to take advantage of the partnership losses under the Act. *Koch v. Director, Div. of Taxation,* 15 *N.J. Tax* 387, 394 (Tax Ct.1995).

Koch appealed to the Appellate Division, who in an unpublished *per curiam* opinion affirmed the Tax Court for substantially the reasons stated by that court. We granted certification. 152 *N.J.* 12, 702 *A.2d* 351 (1997).

### II.

Koch asserts that the central issue is whether the Act requires him to reduce the basis of his partnership interest by the

partnership losses for which he received no benefit under the Act. He claims that to do so results in a taxable capital gain greater than his economic gain. He contends that such a result violates the plain language of *N.J.S.A.* 54A:5-1c ("section 5-1c"), which provides for the adoption of federal methods of accounting and federal nonrecognition principles, and also contravenes the intent of the Legislature not to impose a tax on capital.

The Director asserts that section 5-1c plainly and unambiguously provides that "federal adjusted basis" must be used in determining gain on the sale, exchange or disposition of property. He notes that the Legislature did not adopt a tax scheme identical to the federal tax scheme, did not intend that taxpayers offset losses and gains from one category of income against another category, and did not provide for the carryforward of losses. Moreover, the Legislature intended that "federal adjusted basis" be used for administrative convenience and simplicity.

## A.

*N.J.S.A.* 54A:5-1 provides that New Jersey gross income shall consist of fourteen categories. One of those categories is the net gains or income that arise from the disposition of property. That category of income is addressed in section 5-1c which provides in pertinent part,

c. Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined *in accordance with the method of accounting used for federal income tax purposes.* For the purpose of determining gain or loss, the *basis of property shall be the adjusted basis used for federal income tax purposes.*

\* \* \*

... The term "net gains or income" shall not include gains or income from transactions to *the extent to which nonrecognition is allowed for federal income tax purposes.*

[emphasis added].

Thus, section 5-1c sets forth three federal income tax concepts that are to be applied in calculating net gain: (1) the method of

accounting used for federal income tax purposes, (2) the use of the federal adjusted basis, and (3) the exclusion of gains to the extent federal rules require nonrecognition. *Walsh v. Director, Div. of Taxation,* 10 *N.J. Tax* 447, 459 (Tax Ct.1989), *aff'd per curiam,* 240 *N.J.Super.* 42, 572 *A.*2d 222 (App.Div.1990). Koch asserts that by improperly limiting his focus to the adjusted basis provision, the Director fails to recognize and apply the other provisions, thereby failing to harmonize the three provisions.

### B.

It is well-established that in construing a statute, one must first consider its plain language. *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). As this Court recognized in *Merin, supra,* such language should be read according to its ordinary or general meaning, so long as that reading comports with the statute's legislative intent. 126 *N.J.* at 434–35, 599 *A.*2d 1256. If the statute "is clear and unambiguous on its face and admits of only one interpretation, [courts should] delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982).

Section 5–1c does not "admit of only one interpretation." *Walsh v. Director, supra,* 10 *N.J. Tax* at 459–61. When there is a conflict in interpretation, it is a well-established canon of construction that

> a legislative provision should not be read in isolation or in a way which sacrifices what appears to be the scheme of the statute as a whole. Rather a statute is to be interpreted in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.
>
> [*Zimmerman v. Municipal Clerk of Tp. of Berkeley,* 201 *N.J.Super.* 363, 368, 493 *A.*2d 62 (App.Div.1985) (citing *Alexander v. New Jersey Power & Light Co.,* 21 *N.J.* 373, 122 *A.*2d 339 (1956)).]

Finally, "whatever be the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment read in full light of its history, purpose and context." *State v. Haliski,* 140 *N.J.* 1, 9, 656 *A.*2d 1246 (1995) (quoting *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966)).

### C.

■ New Jersey courts generally defer to the interpretation that an agency gives to a statute that agency is charged with enforcing. *Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 25, 527 *A.*2d 843 (1987). We have recognized the Director's expertise, particularly in specialized and complex areas of the Act. *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984) (stating that Director's interpretation will prevail "as long as it is not plainly unreasonable"). However, this deference is "not total, as the courts remain the 'final authorities' on issues of statutory construction and are not obliged to 'stamp' their approval of the administrative interpretation." *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575, 384 *A.*2d 795 (1978).

With these statutory construction tenets in mind, we consider the interpretation of section 5–1c. Specifically, how should two of the three concepts incorporated in that section, namely, the application of federal accounting methods and federal nonrecognition principles be reconciled with the federal adjusted basis provision.

### D.

■ Some of the fourteen categories of income set forth in the Act are taxed on a gross basis: salaries, *N.J.S.A.* 54A:5–1a, interest, *N.J.S.A.* 54A:5–1e, and dividends, *N.J.S.A.* 54A:5–1f. Others, however, are taxed on a net basis: net profits from business, *N.J.S.A.* 54A:5–1b, net gains or income from rents, royalties, patents and copyrights, *N.J.S.A.* 54A:5–1d, and the net gains and income from the disposition of property, section 5–1c. As explained by the Tax Court in *Walsh, supra,* 10 *N.J. Tax* at 460, an examination of the statutory scheme discloses that with respect to section 5–1c income, the Legislature intended to tax only income and not a return of capital.

*Walsh* involved a taxpayer who held stock in four Subchapter S corporations that suffered losses in prior years. In accordance

with federal income tax provisions, the taxpayer's federal income tax basis was reduced by the losses allocated to him in prior years. *Id.* at 448–55. For New Jersey income tax purposes, however, the losses were not deductible because New Jersey did not recognize Subchapter S corporations during those years. *Ibid.* Therefore, the taxpayer did not reduce his basis in computing his gain for New Jersey income tax purposes. *Ibid.* Nonetheless, the Director assessed a deficiency, asserting that, pursuant to section 5–1c, the taxpayer was required to use the federal adjusted basis in computing his gain for New Jersey income tax purposes. *Id.* at 455–56.

Considering the federal references contained in 5–1c together, the Tax Court concluded that "the statute expresses an intent to tax only those transactions from which an individual derives an economic gain." *Id.* at 460. As the Tax Court observed:

> With respect to the categories which are taxed by a net rather than a gross method, the statute expresses an intent to tax only those transactions from which an individual derives an economic gain. If that were not the intent, the statute would impose the tax on the total proceeds received from the disposition of property rather than the "net gains or net income, less net losses derived from the sale." *N.J.S.A.* 54A:5–1c. Thus, it is clear that with respect to gains on the disposition of property, the tax is a tax on net income, and return of capital is not income. The word "income" embodies the concept of accession to wealth. *Commissioner v. Glenshaw Glass Co.,* 348 *U.S.* 426, 431, 75 *S.Ct.* 473, 99 *L. Ed.* 483, reh'g den. 349 *U.S.* 925, 75 *S.Ct.* 657, 99 *L. Ed.* 1256 (1955). Return of capital is not accession to wealth.
>
> [*Ibid.*]

In this case, Koch purchased his partnership interest for $75,000 and sold it for $125,000, resulting in an economic gain of $50,000. Any income tax imposed on an amount greater than Koch's economic gain of $50,000 constitutes a tax on amounts that represent neither economic gain nor recovery of a past tax benefit. Instead, it represents a tax on a return of capital. Such a result was not intended by the Legislature.

### E.

The Director's position ignores the federal accounting and non-recognition provisions of section 5–1c. Although federal tax ac-

counting methods are incorporated in section 5–1c, the Director claims that *N.J.S.A.* 54A:5–2c ("section 5–2"), prohibiting a taxpayer from deducting losses in one of New Jersey's statutory categories of income against income in any other category, overrides that provision. We disagree.

In addition to the federal adjusted basis provision, section 5–1c also provides that net gains should be determined "in accordance with the method of accounting allowed for federal tax purposes". *N.J.S.A.* 54A:8–3c likewise provides that "[a] taxpayer's accounting method under this Act shall be the same as his accounting method for Federal income tax purposes." This Court has expressly stated that when the Legislature included references to federal methods of accounting or nonrecognition provisions of the Internal Revenue Code, "it [explicitly] intended to incorporate federal income tax concepts." *Smith v. Director, Division of Taxation,* 108 *N.J.* 19, 33, 527 *A.*2d 843 (1987).

Courts have interpreted section 5–1c expansively and have recognized that section 5–1c "is not limited to the recognized overall methods of accounting, such as the cash method or accrual method, but rather was intended to include any method or system as used for federal tax purposes 'by which taxpayers determine the amount of their income, gains, losses, deductions and credits, as well as the time when such items must be realized and recognized.'" *Baldwin v. Director, Division of Taxation,* 10 *N.J. Tax* 273, 284 (1988), *aff'd,* 237 *N.J.Super.* 327, 567 *A.*2d 1021 (App.Div.1990). Despite the lack of any express language to that effect in the New Jersey statute, the court held that IRC ¶ 165(c), which disallows losses from dispositions of personal property, constituted a federal method of accounting. Accordingly, pursuant to section 5–1c, the taxpayer's loss on the sale of his personal lawn tractor was denied.

Similarly, in *Estate of Tina Guzzardi v. Director, Div. of Taxation,* 15 *N.J. Tax* 395 (Tax Ct.1995), *aff'd per curiam,* 298 *N.J.Super.* 568, 690 *A.*2d 137 (App.Div.1996), the Tax Court held

that section 5–1c incorporates by reference the installment sale reporting rules of IRC § 453. Even though the Act has no parallel provision, the court found the installment sale reporting rules constituted a federal accounting method. *See also DuBois v. Director, Div. of Taxation,* 4 *N.J. Tax* 11, 23 (1981), *aff'd* 6 *N.J. Tax* 249 (1982), *aff'd* 95 *N.J.* 234, 470 *A.*2d 446 (1983) (holding with respect to *N.J.S.A.* 54A:8–3(c) and section 5–1c that by "directing that federal income tax accounting methods be applied, the Legislature has accepted all accounting methods recognized by the Code"). *Walsh, Baldwin,* and *Guzzardi* all contradict the Director's approach and give meaning to the section 5–1c provision that requires that the federal method of accounting should be used to calculate section 5–1c gain. The Director's interpretation fails to give any meaning to either the federal accounting method provision or the nonrecognition provision.

Furthermore, Koch's calculation of gain conforms to section 5–1c's directive to use the method of accounting allowed for federal income tax purposes to determine gain or loss for New Jersey gross income tax purposes. The federal method of accounting would require subtraction of Koch's cost basis for his partnership interest from the sale price. Under the federal method, losses not passed through would not reduce a partner's basis, and gain would be determined by computing the difference between a partner's cost basis (unreduced by partnership losses) and the proceeds received from the sale of the partnership interest. *Walsh, supra,* 10 *N.J. Tax* at 461. Accordingly, use of the method of accounting allowed for federal income tax purposes as directed by section 5–1c does not require the use of Koch's federal adjusted basis to compute his gain on the disposition of his partnership interest.

## III.

### A.

We reject several of the Director's other assertions. We disagree that *Walsh* is limited to Subchapter S corporations and not

applicable to partnerships. Although the issue in *Walsh* arose in the context of Subchapter S corporations, the essence of *Walsh, supra*, 10 *N.J. Tax* 447 was to recognize that a taxpayer cannot be taxed on a return of capital. Despite section 5–1c's federal basis provision, *Walsh* required a taxpayer to reduce his basis only for those losses deductible by him. The issues in *Walsh* are identical to the issues presented in this appeal. Indeed, the Director has presented no cogent reasoning why the *Walsh* reasoning should not apply to a sale of a partnership interest. *See Bello v. Commissioner of Revenue Service*, No. 361968, 1994 WL 151285, at *1 (Conn.Super. Ct., Tax Session, April 20, 1994). In *Bello*, the court applied *Walsh* where taxpayers variously owned shares in S corporations and partnership interests. *Id.* at *4. The taxpayers suffered losses over the years and the losses were passed through to them and their federal tax bases were reduced accordingly. *Id.* at *2. Thereafter, the taxpayers sold their partnership interests and stock in the Subchapter S corporations. *Ibid.* Relying on a Connecticut statute similar to section 5–1c, the taxpayers argued that their state tax basis should not have been reduced because they enjoyed no tax benefit from the passed-through losses. *Ibid.*

Based on the economic distortions identified in *Walsh*, the court held:

> To achieve the result intended by the legislature, while federal adjusted basis is to be used to calculate net gains under the capital gains tax, to the extent that federal adjusted basis is decreased by passed-through losses of S corporations and partnerships that are not, at the time, deductible under Connecticut law, such decrease must be excluded from federal adjusted basis. This approach must be used in order to adjust for the difference in federal and Connecticut treatment of such losses.

> [*Id.* at *7.]

*But see Vasudev v. Director, Div. of Taxation*, 13 *N.J. Tax* 223 (Tax Ct.1993); *Spinella v. Director, Div. of Taxation*, 13 *N.J. Tax* 305 (Tax Ct.1993) (distinguishing *Walsh* by concluding that adjustment to basis was made in *Walsh* because Subchapter S corporations were not recognized as matter of New Jersey law but acknowledging that their cases involved sales of partnership prop-

erty, rather than sale of partnership interests, did not involve returns of capital).

Similarly, we do not find that the Legislature's 1993 Subchapter S corporation legislation, *L.* 1993, *c.* 173, codified at *N.J.S.A.* 54:10A–4 (the "1993 Legislation"), indicated that the Legislature did not believe a *Walsh*-type adjustment was required in the case of partnerships. The 1993 Legislation recognized Subchapter S corporations and provided for their tax treatment. Aside from the Legislature's express endorsement of *Walsh* in the legislative history, *see* Assembly Appropriations Committee Statement accompanying *L.* 1993, *c.* 173, codified at *N.J.S.A.* 54:10A–4, the 1993 legislation is of little relevance to this matter. Because the purpose of the 1993 Legislation was to recognize Subchapter S corporations and the issue of basis adjustments for partnership interests was not before the Legislature or the courts at the time, there was no reason for the Legislature to consider an adjustment to the basis of a interest in a partnership.

We understand that there is presently pending in the Legislature Senate Bill 71, which proposes that a taxpayer's basis in a partnership interest shall be computed in a manner similar to the computation of a taxpayer's basis in shares of a Subchapter S corporation. Pending legislation, however, is of little value in determining legislative intent. *In re Adoption of N.J.A.C. 5:25A–1.1,* 266 *N.J.Super.* 625, 633 n. 1, 630 *A.*2d 383 (App.Div.1993); *Pickett v. Lloyds,* 252 *N.J.Super.* 477, 489, 600 *A.*2d 148 (App.Div. 1991), *aff'd* 131 *N.J.* 457, 621 *A.*2d 445 (1993); *cf. Hammock v. Hoffmann–LaRoche,* 142 *N.J.* 356, 378, 662 *A.*2d 546 (1995) (placing little value on standard proposed by legislation "not enacted into law").

## B.

Nor do we find that applying different adjusted bases will add great complexity to the calculations made under the Act in contravention of the Legislature's call for "simplicity" in tax computations. On this point, we agree with the *Walsh* court:

[I]n weighing this administrative convenience against the resulting imposition of income tax on the return of capital, a result obviously not intended by the Legislature, the former must yield to the latter with respect to the shareholder's disposition of stock of S corporations which have sustained losses. Further, the cost basis concept is not so sophisticated a concept that it cannot be determined by the taxpayer or audited by the Director using federal adjusted basis but excluding those decreases or increases due to S corporation losses or undistributed income.

[10 *N.J. Tax* at 463.]

## C.

Finally, we disagree with the Director that section 5–1c's nonrecognition rules "reflect Congress's determination not to treat certain transactions as taxable events" rather than incorporating federal income tax nonrecognition rules into the New Jersey statute. We agree with the Director that the Legislature did not intend to incorporate tax shelter provisions in the Act. However, there is no evidence that the Legislature intended to penalize a New Jersey taxpayer for investing in a tax shelter for federal income tax purposes. Koch is not requesting any special New Jersey tax treatment. He has gained no tax benefit under the Act and is not seeking one. He is requesting only that he be taxed on his actual economic gain and not on fictitious income. He seeks to be treated as the Legislature intended. That is, he correctly asserts that his return of capital should not be taxed.

## IV.

In accordance with well-established rules of statutory construction, our interpretation of section 5–1c harmonizes its three basic concepts and effectuates the Legislature's plan that the return of capital not be taxed. Because we find under section 5–1c that an adjustment must be made to taxpayer's federal adjusted basis for New Jersey income tax purposes, we need not reach the applicability of the federal tax benefit rule.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.