# TAX COURT OF NEW JERSEY



TAX COURT MANAGEMENT OFFICE
(609) 815-2922

P.O. Box 972
TRENTON, NJ 08625-0972

## Corrected Opinion Notice

### December 31, 2024

**Kara M. Kraman/Irwin M. Slomka, Esqs.**

**Anthony D Tancini, DAG**

**From: Lynne E. Allsop**

**Re: Archit & Monal Amin v. Dir., Div. of Taxation**
**Docket number: 007430-2022**

The attached corrected opinion replaces the version released on December 31, 2024.

The opinion has been corrected as noted below:

1. Page 1 – Plaintiff name corrected; bracket moved after "GIT" not after Act.
2. Page 5- extra space removed after the bracket following the citation (U.S. … ).
3. Page 11 - last 2 sentences before ANALYSIS - word "Chapter" changed to "Section".
4. Page 18 - citation changed to read "GE" not "Ge Solid State".
5. Page 21 – taxation notice date changed to April 10.
6. Footnote 13 - taxation notice date changed to April 10.

NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

Opinion corrected 12/31/24 – pgs. 1, 5, 18, 21 and footnote 13

_____

ARCHIT & MONAL AMIN,        :      TAX COURT OF NEW JERSEY

                                 :      DOCKET NO.  007430-2022

        Plaintiffs,       :

                                 :

        v.                  :

| | Approved for Publication |
|---|---|
| | In the New Jersey |
| | Tax Court Reports |

DIRECTOR, DIVISION OF     :

TAXATION,

        Defendant.     :

_____:

Decided:  December 31, 2024

Kara M. Kraman; Irwin M. Slomka for plaintiffs
(Blank Rome LLP, attorneys).

Anthony D. Tancini for defendant
(Matthew J. Platkin, Attorney General of New Jersey, attorney).

SUNDAR, P.J.T.C.

This opinion decides the parties' respective summary judgment motions in the above matter.  The issue is whether defendant properly required plaintiffs to include the undistributed earnings of certain controlled foreign corporations as deemed repatriation dividends taxable under the New Jersey Gross Income Tax ("GIT") Act for tax year 2017 because plaintiffs reported the same on their federal income tax returns under Internal Revenue Code ("Code" or "I.R.C.") § 965.

\*

Plaintiffs contend that defendant erred in requiring plaintiffs to include the undistributed foreign earnings as taxable dividends because the GIT Act does not enumerate deemed dividends as a taxable category of income. Rather, they say, the controlling statute, N.J.S.A. 54A:5-1(f), defines dividends to include only actual distributions or payments. Plaintiffs note that the undistributed foreign income is not a dividend as confirmed recently by the Supreme Court in Moore v. United States, 602 U.S. 572 (2024). They maintain that if the deemed repatriation dividends are construed as taxable under the GIT Act, then (1) defendant's informal decision in this regard violates the rule-making requirements of the Administrative Procedures Act ("APA"), and (2) the penalties assessed should be waived since plaintiffs had a justifiable basis to exclude the alleged deemed dividends on their GIT return.

Defendant ("Taxation") argues that it is entitled to judgment as a matter of law because the Internal Revenue Service ("IRS") considers the undistributed earnings as income, and as deemed dividend income, therefore, the same are taxable as dividends under the GIT Act. Alternatively, Taxation argues, N.J.S.A. 54A:8-3(c) requires taxpayers to follow the federal methods of accounting for GIT purposes, therefore, plaintiffs should report the federally reported income as dividends under N.J.S.A. 54A:5-1(f).

For the reasons below, the court finds that the undistributed income which plaintiffs had to federally report under I.R.C. § 965, is not includible under the GIT

2

Act as dividends under the plain meaning of N.J.S.A. 54A:5-1(f). Due to this conclusion, the court does not address plaintiffs' alternative argument that Taxation violated the requirements of the APA and their request for waiver of penalties. The court therefore grants plaintiffs' motion for summary judgment and reverses Taxation's final determination.

**FACTS**

The following are the undisputed material facts relevant to the cause of action. Plaintiffs are United States ("U.S.") citizens and New Jersey residents. Plaintiff, Mr. Amin, is a direct shareholder in four controlled foreign corporations ("CFC"). A CFC is a foreign corporation where more than 50% of the total combined voting power or total value of the stock is owned by U.S. shareholders. I.R.C. § 957(a). Mr. Amin is a U.S. shareholder under I.R.C. § 951(b) (which defines a U.S. shareholder as an owner of 10% or more of the total combined value or voting power of the shares of a foreign corporation).

One of the four CFCs is a Canadian wholesale distributor of specialty foods in which Mr. Amin owns 50% of the shares. The other three CFCs are entities formed in India in which Mr. Amin owns 21%, 40%, and 50.48% of the shares respectively.

Both plaintiffs are also indirect shareholders in two related CFCs. One is an Australian distributor of specialty food products, which is owned 100% by an Australian holding company. The Australian holding company, in turn, is 100%

owned by a New Jersey limited liability company ("LLC"), which is not a CFC. Plaintiffs each hold a 12% and 9% ownership interest in the LLC. Thus, plaintiffs are direct and indirect shareholders in six CFCs.[1]

*Federal Taxation of Income from CFCs*

"Since 1962, Congress has . . . treated American-controlled foreign corporations as pass-throughs. That 1962 law (known as Subpart F) attributes certain income, mostly passive income, of American-controlled foreign corporations to their American shareholders and then taxes those shareholders on that income." Moore, 602 U.S. at 577-78.[2] The CFCs were "treated as pass-through entities" where corporate, "mostly passive income," was attributed to the American shareholders, who were then taxed on that income. Ibid.

A U.S. shareholder is taxed whether or not the CFC's current earnings are distributed (i.e., actually paid). I.R.C. §§ 951(a); 952; Treas. Reg. § 1.951-1(b)(2)(ii), Example 1 (if a CFC "derives $100x of subpart F income, has $100x of earnings and profits, and makes no distributions," in a tax year, then its sole

---

[1] The six CFCs are entities within plaintiffs' family's worldwide group of companies.

[2] Subpart F is titled "Controlled foreign corporations" and contains §§ 951-969. It is within Part III ("Income from sources without the United States") of Subchapter N ("Tax based on income from sources within or without the United States") within Chapter 1 ("Normal taxes and surtaxes") of Subtitle A ("Income taxes") of the Code.

shareholder's "pro rata share of subpart F income is $100x");[3] Precision Castparts Corp. v. Neb. Dep't of Revenue, 10 N.W.3d 707, 709 (Neb. 2024) (U.S. shareholders "are taxed on a proportionate share of specified categories of [the CFCs] undistributed earnings").

In 2017, the Federal Tax Cuts and Jobs Act ("TCJA"), P.L. 115-97, among others, amended certain provisions of Subpart F. Specifically, I.R.C. § 965(a) (hereinafter "Section 965"), which is titled "Treatment of deferred foreign income upon transition to participation exemption system of taxation," requires the inclusion of a U.S. shareholder's respective shares of post-1986 accumulated earnings and profits ("E&P") of CFCs. The TCJA "attributes more income, including active business income, of American-controlled foreign corporations to their American shareholders and then taxes those shareholders on that income." Moore, 602 U.S. at 578.

A U.S. "shareholder's pro rata share of any amount with respect to any" CFC is to be determined "by treating such amount in the same manner as subpart F income." I.R.C. § 965(f)(1). See also Moore, 602 U.S. at 580 ("Similar in structure to subpart F, [Section 965] attributed the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders, and

---

[3] Thus, Subpart F income previously included is not taxed again "when such amounts are distributed." See I.R.C. § 959(a).

then taxed those American shareholders on their pro rata shares of that long-accumulated income").

A one-time tax is imposed on such included income, after certain deductions and credits for tax year 2017. Silver v. IRS, 531 F. Supp. 3d 346, 349 (D.D.C. 2021) ("Section 965" was amended "to impose a one-time 'transition tax' on U.S. shareholders of certain specified foreign corporations based on the earnings accumulated by those entities since 1986"). The one-time tax, also called the "repatriation tax," is imposed by "deeming" the "deferred foreign earnings" as being "repatriated and included in the U.S. person's income for the 2017 tax year." Id. at 351-52. Subject to certain conditions, the shareholders can elect to pay this tax in eight annual installments. Id. at 352 (due to the "potential hardship associated with paying taxes on 30 years' worth of deferred earnings," a taxpayer has various options to pay the same).[4]

*Taxation's Response to Section 965*

By Notice dated March 16, 2018, titled "New Jersey's Treatment of Deemed Repatriation Dividends Reported Pursuant to [Section] 965,"[5] Taxation stated that the TCJA

---

[4] The IRS proposed regulations to Section 965, among others, on August 9, 2018, which were then finalized, and promulgated on February 5, 2019.

[5] Available at https://www.nj.gov/treas/taxation/section965.shtml (as updated April 24, 2020) (last visited Nov. 24, 2024).

6

requires a specified foreign corporation (as defined in the . . . IRC) that has accumulated post-1986 deferred foreign income to report such income as a deemed repatriation dividend, which will be taxed to the recipient at a reduced effective federal tax rate. Regardless of whether the earnings and profits are brought back, the repatriation transition tax is imposed on the deemed repatriation dividends for the last tax year beginning before January 1, 2018.

The Notice advised taxpayers that "the deemed repatriation dividends will be excluded from entire net income," for purposes of the Corporation Business Tax ("CBT") Act under N.J.S.A. 54:10A-4(k)(5). However, under statutory amendments (citing L. 2018, c. 48 and L. 2018, c. 131), the Notice stated, "New Jersey has decoupled from the deduction and exemptions permitted under" I.R.C. § 965 and reduced the exclusion amount to 95%" (from a 100% exclusion). As to personal income tax, the Notice advised:

> For New Jersey Gross Income Tax purposes, dividends are an enumerated category of income. Thus, deemed repatriation dividends reported under IRC Section 965 must be included in New Jersey gross income in the same tax years and in the same amount as reported for federal purposes.

On April 10, 2019, Taxation issued an "FAQ" document to "explain[] how the [I.R.C.] applies to [the GIT Act] and focuses on IRC §965 deemed repatriation dividends," among others, as follows:[6]

---

[6] Available at https://www.nj.gov/treas/taxation/TCJA.shtml (as updated December 4, 2023) (last visited Nov. 24, 2024).

**How is income under IRC §965 reported for [GIT] purposes?**

Dividends are an enumerated category of income. Therefore, deemed repatriation dividends reported under IRC §965 must be included in New Jersey gross income in the same tax year and in the same amount as reported for federal purposes.

**When is a taxpayer required to pay the tax resulting from the IRC §965 income inclusion?**

Income reported under IRC §965 must be included in New Jersey gross income in the same tax year and in the same amount as reported for federal purposes. Taxpayers are required to pay their New Jersey tax liability at the same time that the IRC §965 income is included in New Jersey gross income.

IRC §965 Income Tax payments must be paid timely. New Jersey law does not provide for any deferment of payment or the installment payment method. Therefore, New Jersey does not follow IRC §965(h), IRC §965 (i), or any other federal election to defer payment.
. . .

**How is income under IRC §965 reported by an individual who has ownership in a C corporation?**

Dividends are an enumerated category of income and are defined by <u>N.J.S.A.</u> 54A:5-1(f). Therefore, they are reportable and taxable in the same period that the deemed distribution is reported for federal income tax purposes.

Under <u>N.J.S.A.</u> 54A:8-3(c): "A taxpayer's accounting method under this act shall be the same as their accounting method for Federal income tax purposes . . ." A taxpayer's method of accounting for federal income tax purposes determines not only the method used to compute income, but it also determines when the income should be recognized and reported. Therefore, taxpayers will

> recognize and report income in the same period as they do for federal income tax purposes.
>
> Shareholders should report this income as Dividends on the NJ-1040.

*Plaintiffs' 2017 Income Tax Returns*

For tax year 2017, plaintiffs jointly filed a federal income tax return ("US-1040") and a New Jersey resident GIT return ("NJ-1040") sometime in September 2018. On their US-1040, they reported their share of the post-1986 income earned by the six CFCs in a total amount of $16,614,379 ($16,487,846 from the directly held stock in the four CFCs, and $126,533 from the indirect ownership of the two Australian CFCs). Plaintiffs did not receive any portion of this amount, i.e., they received no distribution either in cash or as property. They reported the entire amount as Subpart F income under Section 965 (thus, not as dividends under I.R.C. § 61(a)(7)).[7] After certain deductions and adjustments, their federal income tax liability on the Section 965 income was $683,436. Plaintiffs elected to pay this in eight statutorily permitted installments and thus paid $54,675 for tax year 2017.

On their NJ-1040, plaintiffs did not report any portion of the Section 965 undistributed income.

---

[7] From the record before the court, it does not appear that plaintiffs reported the undistributed income of the Australian CFCs as their pro rata share of pass-through income from the New Jersey LLC.

Taxation audited plaintiffs' NJ-1040 and included the Section 965 income of $16,614,379 as dividends, "an enumerated category of income" under the GIT Act. Taxation stated that the amount was a "deemed repatriation dividend" which should be reported as income "in the same tax year and in the same amount as reported for federal purposes." It issued a notice of deficiency assessing GIT against plaintiffs with penalties and interest (through March 5, 2022), in the total amount of $2,108,390.

Plaintiffs appealed the deficiency notice directly to this court. The parties' respective motions for summary judgment followed.[8]

Plaintiffs contend that the Section 965 income is not a specified category of taxable income under the GIT Act; it is not dividend income, thus, cannot be deemed dividend income; and Taxation's decision to include deemed dividends as a sub-category of dividends constitutes an invalid administrative rulemaking. They also argue that the penalties should be waived since the underpayment if any, of GIT, was due to reasonable cause.

Taxation argues that federally, the repatriation income is considered as deemed dividend income, therefore, it is taxable under the GIT Act, especially since the latter requires a taxpayer use the same federal accounting methods for GIT

---

[8] The motions were stayed pending the U.S. Supreme Court's decision in <u>Moore</u>. The only issue in <u>Moore</u> was whether Section 965 violated the Sixteenth Amendment of the U.S. Constitution, and the Court ruled that it did not.

purposes. Taxation also points out that plaintiffs never applied for nor requested a penalty waiver, but jumped the gun to litigate in this court, therefore, their argument in this regard is specious. Taxation also notes that due to its formal Notices of Section 965's application for Corporation Business Tax ("CBT") and GIT, a more formal regulatory route of alerting the taxpayers was not required. This was especially true here, as Section 965 was a new law that imposed a new one-time tax, thus, Taxation argues, time was of the essence.

**ANALYSIS**

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Here, the issues are purely legal: whether the Section 965 income is taxable as deemed dividends for GIT purposes. Therefore, resolution via summary judgment is appropriate.

*A. Inclusion of Dividends under the GIT Act*

The GIT Act taxes various categories of specific income, thus, if a type of income is not included, then it is not taxable. See Koch v. Dir., Div. of Taxation, 15 N.J. Tax 387, 390 (Tax 1995) (the GIT Act "only taxes expressly identified classes of income" thus, although discharge of indebtedness income is federally taxable, "it

11

is not included" in the GIT Act and thus is nontaxable by New Jersey), rev'd on other grounds, 157 N.J. 1 (1999).[9] See also Weintraub v. Dir., Div. of Taxation, 19 N.J. Tax 65, 76 (Tax 2000) ("when the Legislature enacted the [GIT] Act, it made a conscious decision not to incorporate the federal income tax model of including income from all sources and chose, instead, to limit taxable income to . . . specific categories" thus discharge of debt income is not subject to GIT).

Dividends are a specified category of income under the GIT Act and is defined thus:

> Dividends means any distribution in cash or property made by a corporation, association or business trust that is not an S corporation, (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid and any distribution in cash or property made by an S corporation, as specifically determined pursuant to . . . [N.J.S.A.] 54A:5-14[].
>
> [N.J.S.A. 54A:5-1(f).] [10]

The plain language of the statute requires there be a "distribution" in cash or kind, and the source of the distribution should be from current or accumulated corporate earnings/profits, for the distribution to be considered a dividend.

---

[9] The taxpayer appealed the trial court's additional conclusion that they should use the federal adjusted basis in computing gain/loss from sale of property. This was the only issue before the New Jersey Supreme Court.

[10] When enacted, see L. 1976, c. 47, N.J.S.A. 54A:5-1(f) defined dividends to "mean[] any distribution in cash or property made by a corporation, association or business trust, (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid."

*B. Deemed Distributions or Deemed Dividends under N.J.S.A. 54A:5-1(f)*

N.J.S.A. 54A:5-1(f) does not define the word "distribution. A commonsense meaning is that it is an actual payment or transfer of money or property, by the payor to the payee, or the availability of the same to the payee from the payor. See Murphy v. Dir., Div. of Taxation, 26 N.J. Tax 432, 446 (Tax 2012) (dividends were distributed to the taxpayer "when cash was placed in his account" over which taxpayers had full possession and control, thus were properly taxable under N.J.S.A. 54A:5-1(f) when received).

Here, it is undisputed that plaintiffs did not receive, whether in cash or in kind, any amount from the CFCs. In other words, they received no economic benefit, actually or constructively, due to their shareholder status. Indeed, they were taxed under Section 965 for the realized but undistributed E&I of the CFCs for tax years 1986 until 2017. The word "repatriated" does not change the fact that the plaintiffs did not receive any amounts, in cash or kind, from the CFCs. Nor is there anything to show that the CFCs made available $16,614,379 to plaintiffs for their use, or that amount was within plaintiffs' unrestricted control for use, during tax year 2017.[11]

---

[11] The Code taxes dividends upon actual receipt. Moore, 602 U.S. at 578 ("shareholders typically pay taxes either when the corporation distributes money, stock, or other property to them as a dividend or when the shareholders sell their shares and have capital gains"). See also id. at 604 ("Shareholders receive income when they sell their shares or when a corporation distributes profits back to its investors by declaring a dividend.") (Barrett, J. and Alito, J., concurring). Note that the dissent in Moore pointed out that "unlike the rest of subpart F," mandatory repatriation tax "has no connection at all to any recognition event or constructive

Thus, under the plain language of N.J.S.A. 54A:5-1(f), Taxation's attempt to include plaintiffs' pro rata share of the CFCs undistributed earnings as dividends fails.

For this reason, the court is unpersuaded by Taxation's dismissal, as irrelevant, plaintiffs' contention that the Section 965 "income does not exactly fit the distributed in cash or property language under N.J.S.A. 54A:5-1(f)." Taxation argues that undue emphasis on one word in construing a statute will create disharmony with the principles of the GIT Act (relying on Koch, 157 N.J. 1). However, this principle of avoiding undue emphasis applies when the statute being construed is ambiguous and susceptible to more than one interpretation. Id. at 7. It does not apply if the statute is "clear and unambiguous," ibid., as is the case here with N.J.S.A. 54A:5-1(f).

The basic principle that the court should not add to or expand an unambiguous statute restrains it from expanding the definition of the word "dividends" in N.J.S.A. 54A:5-1(f) to include a Section 965 "deemed repatriation dividend." The word "deemed" (espoused by Taxation to be read into the definition of "dividends") is not a concept that is a stranger to the GIT Act. See e.g. N.J.S.A. 54A:5-1(a) ("amounts paid or distributed, or deemed paid or distributed, out of a medical savings account" included for GIT purposes); N.J.S.A. 54A:5-4 (GIT is imposed on a partner's share

---

receipt of income" but is based "solely on the ownership of stock on a certain date," thus, there is "no rational basis for Congress to attribute income to a taxpayer." Id. at 650 (Thomas, J. and Gorsuch, J., dissenting) (internal quotation marks and citation omitted).

14

of partnership income "whether or not distributed"); N.J.S.A. 54A:5-9 ("S corporation income, dividends, and gain of a shareholder . . . shall be subject to the tax, and the tax shall be imposed on the shareholder's pro rata share, whether or not distributed"). Had our Legislature so desired it could have included language to indicate that undistributed corporate E&P are included under N.J.S.A. 54A:5-1(f). It did not.

Nor is incorporation of federal income tax principles in the GIT Act, via a method of accounting, an unknown concept. See e.g. N.J.S.A. 54:51A-1(b) ("net income from the operation of a business, profession or other activity . . . determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes" but sans certain deductions); N.J.S.A. 54:51A-1(c) (net gains/income from "the sale, exchange or other disposition of property . . . as determined in accordance with the method of accounting allowed for federal income tax purposes" are includible under the GIT Act). Had our Legislature so desired it could have included language to indicate that undistributed corporate earnings are taxable as dividends when so taxable under federal income tax law. It did not. See e.g. Murphy, 26 N.J. Tax at 446 ("N.J.S.A. 54:51A-1(f) does not incorporate federal methods of accounting with respect to the recognition of dividends. As a result, the analysis of when a dividend is received is based on the plain language of the statute") (citations omitted); N.J.S.A. 54A:5-14 ("a distribution made by an S corporation with respect to its stock to a resident shareholder" is

15

subject to the GIT Act "to the extent that the distribution is treated as a dividend or as gain from the sale or exchange of property" under I.R.C. § 1368). There is no incorporation of any federal tax statutes that *undistributed* cash/property is included in the definition of dividends or are *deemed* to be dividends under N.J.S.A. 54A:5-1(f).

Further, the taxability of deemed distributed Subpart F income to individual U.S. shareholders was prevalent long before 2017, thus much earlier than the enactment of Section 965. It pre-dated N.J.S.A. 54A:5-1(f) which was enacted in 1976. This evidences the New Jersey Legislature's choice not to follow the federal income tax scheme of including, any undistributed Subpart F income as gross income, when enacting N.J.S.A. 54A:5-1(f).

More importantly, when Section 965 was enacted, the New Jersey Legislature promptly amended certain provisions of the CBT Act regarding the treatment of Section 965 income. See N.J.S.A. 54:10A-4(k)(5)(ii); (iii); Sponsors Statement to A. 4202 at 23 (June 18, 2018) (New Jersey's "decoupling from Internal Revenue Code" by "disallow[ing] the deduction taken for federal purposes against income reported pursuant to . . . [S]ection 965"); Sponsor's Statement to A. 4495 at 42 (Sep. 24, 2018) (bill allows "a CBT deduction to mirror the federal deduction allowed" under I.R.C. §250 for "income derived from certain foreign assets," and taxed under the TCJA as global intangible low-taxed income (GILTI) and foreign-derived

16

intangible income (FDII) from CFCs).  Note that N.J.S.A. 54:10A-4(k)(5)(ii) specifically included the phrase "deemed dividend" for purposes of allocation.

In contrast, the Legislature did not amend the GIT Act to incorporate treatment of the Section 965 income.  Rather, the only change to the GIT Act was as to an unrelated deduction item, namely, the decoupling "from" I.R.C. § 199A, which "allows taxpayers other than corporations a deduction of 20 percent of qualified business income earned in a qualified trade or business, subject to two certain limitations."  See Sponsors Statement to A. 4202 at 23.

In 2023, the CBT Act was amended again, and among others, enacted a provision that the GILTI and FDII, taxable under I.R.C. § 951(a), "shall be considered a dividend." N.J.S.A. 54:10A-4(k)(5)(G). See also Statement to A. 5323 50 (March 20, 2023) ("The bill modifies the treatment of" of GILTI and FDII "by repealing the deduction currently allowed for GILTI and FDII and by treating GILTI as a dividend subject to the dividend exclusion rules for privilege periods ending on and after July 31, 2023").[12]  There was no contemporaneous amendment to N.J.S.A. 54A:5-1(f).  While the law amended the GIT Act, the amendment was provided that income from business/partnership/S corporations should be sourced in a "manner consistent with the" the CBT Act.  Statement to A. 5323, 50-51.

---

[12] The TCJA added I.R.C. § 951A, for tax years beginning after December 31, 2017, which requires a U.S. shareholder of any CFC to include in gross income the shareholder's GILTI inclusion.

17

Clearly, the New Jersey Legislature was aware of Section 965 from its enactment in 2017. Had it intended to incorporate or apply Section 965 to N.J.S.A. 54A:5-1(f), it could have said so, just as it amended sections of the CBT Act several times. It did not. Therefore, the court is unpersuaded by Taxation's contention that the definition of dividends under N.J.S.A. 54A:5-1(f) can be interpreted or extended to include the Section 965 income as "deemed repatriation dividends." See e.g. GE v. Dir., Div. of Taxation, 132 N.J. 298, 312 (1993) (rejecting Taxation's contention that its regulatory interpretation of a tax exemption statute should control, when that interpretation added words to the statute, and the "legislative history . . . fails to demonstrate that the Legislature even considered, much less approved, the 1969 regulation in re-enacting" the statute, especially where the 1969 regulation was "not of longstanding and consistent application" and there was no "direct proof that the Legislature was aware of, or actually intended to adopt" Taxation's regulation). See also Marrinan v. Dir., Div. of Taxation, 17 N.J. Tax 47, 55 (Tax 1997) (when "the Legislature specifically provided for a loss carryover deduction in" the CBT Act, its "failure to include" a similar provision" in the GIT Act "indicates a legislative intent that loss carryover deductions are not permitted under N.J.S.A. 54A:5-1(b) or (c)").

Because of the above ruling, the court need not consider whether the Section 965 income is/are dividend(s), or as plaintiffs, argue, non-dividend Subpart F foreign income. It is true that Section 965 income is from the post-2018 accumulated E&I of a CFC, and thus conceivably within the ambit of N.J.S.A. 54A:5-1(f) which

18

defines a dividend as cash or kind distribution from the current or accumulated corporate earnings. See also I.R.C. § 316(a) (defining dividend to mean distributions of property by a corporation to its shareholders out of current or accumulated E&P, the term "property" including money, per I.R.C. § 317(a)). But see Moore, 602 U.S. 44 S. Ct. at 577 (Section 965 "attributes more income, including active business income" of CFCs to their shareholders); I.R.C. § 965(d)(3)(B) (defining "post-1986 E&P as the one determined "without diminution by reason of dividends distributed during the taxable year described in subsection (a) other than dividends distributed to another specified foreign corporation"); Precision Castparts Corp., 10 N.W. 3d at 713 ("Section 965 did not explicitly deem the income inclusion to be dividends," to the contrary, "rather than stating that the [income] inclusion should be taxed in the manner and at the rates applicable to dividends, Section 965 sets forth specific rates of taxation and other specific requirements for the income included pursuant to the statute"). Legislative sanction in this regard, would of course, clarify whether the Subpart F income is to be treated as dividends, and/or a distributive share of pass-through income, to a CFC's shareholder because they were "deemed" to have been made from the CFC's E&I.[13]

---

[13] As noted above, the New Jersey Legislature determined to classify the Section 965 income, the GILTI and the FDII income as dividends for CBT purposes. Generally, the CBT Act and the GIT Act are not read in pari materia. Marrinan, 17 N.J. Tax at 55 (declining to engraft provisions from CBT Act onto the GIT Act); Mandelbaum v. Dir., Div. of Taxation, 20 N.J. Tax 141, 151 (Tax 2002) ("The CBT Act and the GIT Act are separate and distinct. They are not in pari materia."). It

19

In sum, the court finds that the Section 965 income (subject to the one-time federal income transition/repatriation tax) is not includible as dividends under the plain meaning of N.J.S.A. 54A:5-1(f).

## C. Method of Accounting

Taxation alternatively contends that the Section 965 income is taxable under the aegis of N.J.S.A. 54A:8-3(c). This statute, titled "Accounting periods and methods," provides:

> Accounting methods. A taxpayer's accounting method under this act shall be the same as his accounting method for Federal income tax purposes. In the absence of any accounting method for Federal income tax purposes, New Jersey taxable income shall be computed under such method as in the opinion of [Taxation] clearly reflects income.

Based on this statute, Taxation's April 10, 2019, Notice (updated December 4, 2023), see n.6, stated that the method of accounting applies "not only [to] the method used to compute income, but it also determines when the income should be

_____

does appear problematic to contend that the same CFC's distribution is dividend to a corporate shareholder under the CBT Act but is not a dividend because the direct shareholder of the CFC is an individual. If this argument were to prevail, then that shareholder would possibly never have to pay gross income tax on the CFC's distribution on grounds it does not fit within any category of the GIT statute (unless it can be considered as pass-through income indirectly to the individual such as if the shareholder is an LLC or other pass-through entity). But see Taxation's April 10, 2019, Notice (updated December 4, 2023) at n.6, (pursuant to "final federal regulations and IRS Notice 2019-46," the GILTI income should be reported "when the income is actually distributed from earnings and profits as Dividend Income" for GIT purposes).

recognized and reported." This means, per the Notice, that shareholders must (a) "recognize and report" the Section 965 income under the GIT Act at the same time as done federally, and (b) report this income as "dividends on the NJ-1040."

If, however, as this court has now ruled, the Section 965 income is not includible as dividends under N.J.S.A. 54A:5-1(f), then the general provision of N.J.S.A. 54A:8-3(c) does not apply. In other words, if a type of income does not *fit within the definition of* any of the specified categories of income under the GIT Act, it cannot be made includible simply because the taxpayers federally reported such income. Since plaintiffs did not federally report any of the CFC income amounts as dividends (taxable under I.R.C. §61(a)(7)), or as distributive share of partnership income (as to the LLC portion), then it cannot be captured under the GIT Act via N.J.S.A. 54A:8-3(c).

What is also problematic in Taxation's alternative argument is that the plaintiff taxpayers did not elect or choose a particular accounting method for federal income tax purposes as to the Section 965 income. The federal government decided, under the TCJA, to impose a one-time transition tax upon undistributed CFC income for about 28 taxable years, payable in tax year 2017. It is difficult to agree that this legislative action becomes a "taxpayer's accounting method" for purposes of N.J.S.A. 54A:8-3(c).

Taxation's reliance on the Appellate Division's ruling in Shechtel v. Dir., Div. of Taxation, 32 N.J. Tax 180 (App. Div. 2020) is misplaced. There, the issue was

the allowability of a deduction for passed through partnership loss, an item which undisputedly belonged to the category distributive share of partnership income: N.J.S.A. 54A:5-1(k). That is not the case here because the Section 965 income does not meet the definition of dividends as set forth in N.J.S.A. 54A:5-1(f), i.e., the CFCs did not distribute or pay cash/property to plaintiffs during tax year 2017. Once such distribution is made, plaintiffs should report the same as income. See also n.13.

**CONCLUSION**

For the aforementioned reasons, the court agrees with plaintiffs that Section 965 income, which they were required to report on their US-1040 as Subpart F income under the TCJA, is not includible as dividends under the plain meaning of N.J.S.A. 54A:5-1(f). Consequently, there is no need to decide whether Taxation violated the APA when it issued its Notices on the application of Section 965 to the GIT Act, or whether its imposition of penalties in this matter was unreasonable.

The court grants plaintiffs' motion for summary judgment and sets aside Taxation's GIT assessment against plaintiffs for tax year 2017.